MITCHELL v. STATE.

4907                                    317 S. W. 2d 1

Opinion delivered October 13, 1958.

[Rehearing denied November 17, 1958]

470

*Gordon H. Sullivan,* for petitioner.

*Bruce Bennett, Atty. General; Thorp Thomas, Asst. Atty. General,* for respondent.

CARLETON HARRIS, Chief Justice. This case involves the provisions of Act 419, of the General Assembly of 1957, known as the Uniform Post-Conviction Procedure Act. Petitioner, Esaw Mitchell, was charged, by Information, on March 20, 1957, with the crime of first degree murder, it being alleged that he, with malice aforethought and after premeditation and deliberation, murdered George Beyerlein, Sr. On October 22, 1957, the cause came on for trial, at which time petitioner's attorneys and the prosecuting attorney entered into an agreement that if Mitchell would plead guilty to the charge, the State would not request the death penalty, and would agree to a sentence of life imprisonment.[1] The plea was entered, and a jury impaneled to hear the evidence. The State then put on sufficient evidence to make a *prima facie* case, consisting of the evidence of officer O. A. Allen, who testified as to the oral confession made to him by

---

[1] A part of the agreement also was that Mitchell plead guilty to second degree murder for the murder of Beyerlein's wife. The plea was entered, and Mitchell sentenced to twenty-one years on the charge, the sentence to run consecutively.

petitioner, and the introduction of trousers, shoes, and other articles owned by petitioner, containing blood stains. The court then instructed the jury as follows:

"Ladies and gentlemen, you have one function in this case. You heard the State waive the death penalty and agree to accept life imprisonment in this case. In a case of murder in the first degree, nobody but the jury can assess the punishment and of course, any other verdict that you might bring back except life imprisonment I would set aside. You have no choice and your verdict will be: 'We, the jury, find the defendant guilty of murder in the first degree and fix his punishment at life imprisonment in the State Penitentiary.' "

The jury retired, and shortly returned with their verdict, finding petitioner guilty of murder in the first degree. Petitioner was then committed to the state penitentiary.

On December 17, 1957, Mitchell, while in the state penitentiary, filed a petition *pro se* asking for a new trial, and requesting that an attorney be appointed for him. Present counsel was appointed by the court, and filed an amended petition under Act 419 of the 1957 General Assembly of the State of Arkansas, challenging the legality of Mitchell's incarceration. A hearing was held on the petition, at which time petitioner and his sister testified that they did not understand that a plea of guilty to first degree murder was being entered on the day of the trial, and petitioner stated he did not know that a judgment of life imprisonment was rendered, nor did he make any agreement with his attorneys to accept life imprisonment. Petitioner's two attorneys (at the time of the trial) testified that they entered the plea of guilty to first degree murder after thoroughly discussing the matter with both petitioner and his sister. One of the attorneys testified that he told the sister that if Mitchell could get a life sentence, it should be accepted. This attorney testified that he talked with petitioner at the county jail on several occasions, and Mitchell agreed that he would like to get off with a life sentence. "He thought he could stand that, but he couldn't

stand that chair.'' The attorneys both testified that the matter was explained to both petitioner and his sister, and that they appeared satisfied at the time. At the conclusion of the hearing, the court denied the petition, and this appeal follows.

For reversal, petitioner urges four points.

## I.

That the Petitioner was denied due process under the 14th Amendment to the United States Constitution, and Article II, Sections 7 and 8 of the Constitution of Arkansas.

## II.

That the Court failed to permit the jury to find the degree of the crime of murder in violation of Arkansas Statutes (1947), Section 43-2152.

## III.

That the State failed to make a *prima facie* case of murder in the first degree.

## IV.

That the Court directed a verdict of guilty in a felony case where the punishment for said crime was confinement in the State Penitentiary.

For purposes of discussion, these points will be, more or less, grouped together.

Petitioner was charged with Information filed by the prosecuting attorney, and was represented by competent and experienced counsel, retained for his benefit, and of his own choosing. On August 5, 1957, p e t i t i o n e r, through such counsel, filed a motion to quash the information, alleging that the oral confession was obtained after Mitchell had been held in custody for a long period of time, that petitioner had been threatened, physically abused, and subjected to psychological coercion; that he had been denied constitutional and statutory rights

in that the arresting officers failed to take him forthwith before a magistrate, and that he had not been allowed to see or speak to any friend, close relative or attorney while being held in confinement; that the purported confession having been obtained under those circumstances, same was not competent evidence; that since the information had been issued solely upon the basis of this incompetent evidence, such information should be quashed. A hearing was held on this petition on August 12th, at which time Mitchell testified that he had been held in jail ten or eleven days before the statement was made, that he had been beaten and threatened by officers, and coerced into making a statement, though admitting that no one told him what to say, and that the statement was given in his own words. At the conclusion of the hearing, the court rendered its ruling as follows: "The Court thinks it is premature, and I am overruling the motion to quash, holding that the information is good."

On October 22nd, the case came on for trial, and after consultation between the prosecuting attorney and defense counsel, the plea of guilty was entered, and a jury selected and impaneled to hear the evidence. This plea of guilty was entered by petitioner's counsel, according to their testimony, only after the proposed plea had been thoroughly discussed with petitioner on several occasions, and Mitchell and family were in the front of the court room when the plea was entered. To enter a plea of guilty in a first degree murder case is not unusual, and numerous cases in this state have been handled in exactly the same manner. It would appear that up to this point, there was nothing in the proceeding of October 22nd which did not fully conform to the requirements of the federal constitution, the state constitution, and our statutory law. It seems clear that both Mitchell, his family, and counsel, felt that his interest was best being served by entering the plea.

It is argued that the State failed to make a *prima facie* case of murder in the first degree, but we do not

agree. A study of the transcript reveals ample evidence to sustain a first degree murder conviction. No point would be served in detailing such evidence, since we do not consider petitioner's argument in this respect pertinent, in reaching our determination.

Section 43-2152 of Arkansas Statutes (1947) provides as follows:

"The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree of crime shall be found by such jury."

Accordingly, we agree that the court was beyond its rights in directing the jury to find the defendant guilty of first degree murder. It was the duty of the jury, rather than the court, to find the degree of the crime. In *Wells* v. *State,* 193 Ark. 1092, 104 S. W. 2d 451, a plea of guilty was entered by the defendant to first degree murder, and the court instructed the jury as follows:

"The defendant in this case has entered his plea of guilty to the charge against him in the indictment; that is, of murder in the first degree. The law provides in such cases that the jury shall be impaneled to assess his punishment.

The question for you to determine in this case is that of the punishment to be imposed. The law provides that the punishment in such cases shall be death or life imprisonment in the penitentiary."

The jury returned the following verdict: "We, the jury, find the defendant guilty and fix his punishment at death." On appeal, this Court held the instruction to be erroneous, and the verdict bad, the latter conclusion reached because the verdict failed to find the degree of the crime. In the case under discussion, the jury found the degree of the crime as first degree murder, but were given no other choice under the court's instruction.

JUSTICE McHANEY, speaking for the Court in the *Wells* case, said:

"\* \* \* The statute provides that 'the degree of crime shall be found by such jury,' not merely to fix the punishment. \* \* \*"

Though, however, the court committed error, it does not follow that petitioner is entitled to the relief sought. Section One of Act 419 of the General Assembly of 1957, under which petitioner seeks this relief, provides as follows:

"Any person convicted of a felony and incarcerated under sentence of death or imprisonment who claims that the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of *habeas corpus,* writ of *coram nobis,* or other common law or statutory remedy, may institute a proceeding under this Act to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction.

"*The remedy herein provided is not a substitute for nor does it affect any remedies which are incident to the proceedings in the trial court, or any remedy of direct review of the sentence or conviction,*[2] but, except as otherwise provided in this Act, it comprehends and takes the place of all other common law and statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment, and shall be used exclusively in lieu thereof. A petition for relief under this Act may be filed at any time."

---

[2] Emphasis supplied.

We call attention to the italicized portion of this Section. It obviously was not the intent of the legislature that the procedure set out in this Act be used in lieu of an appeal from the original conviction; it merely takes the place of other common law and statutory remedies which have long been available for the purpose of challenging the validity of the prisoner's incarceration. Of course, the act of the court in instructing the jury to bring in a particular verdict was not only a violation of the statute, but actually had the same effect as if the court had acted without a jury, and if Mitchell had appealed after the original trial, this Court doubtless would have directed a reversal because of this error — but no appeal was taken. Instead, this collateral attack is made upon the judgment of the court.

If Act 419 had not been passed, petitioner possibly would have filed his petition with this Court, seeking a writ of *habeas corpus*. At least, that would have been the available remedy. It would therefore appear that in effect, Act 419 is here used in lieu of the remedy that formerly existed — the petition for writ of *habeas corpus*. Under the circumstances in this case, we do not see that Act 419 provides any additional grounds for relief that were not available under this previous remedy. We conclude that this matter is determined by *Ex Parte O'Neal,* 191 Ark. 696, 87 S. W. 2d 401. There, O'Neal had entered his plea of guilty to first degree murder, and had been sentenced by the court, sitting as a jury, to life imprisonment. Petition for writ of *habeas corpus* was filed by O'Neal, alleging the invalidity of the judgment, because no jury was called as required by statute, to hear evidence and fix the degree of the crime. This Court, quoting an earlier case, said:

"* * * If the person restrained of his liberty is in custody under process, nothing will be inquired into, by virtue of the writ, beyond the validity of the process upon its face, and the jurisdiction of the court by which it was issued. If he be detained under a conviction and sentenced by a court having jurisdiction of the cause, no

relief can be given by *habeas corpus,* the general rule being that a conviction and sentence by a court of competent jurisdiction is lawful cause of imprisonment. * * *

"When appellant's rights are measured by the rule heretofore stated, he is entitled to no relief in this proceeding. By Section 11 of Article 7 of the Constitution of 1874, circuit courts are created, and by Section 45 of the same article the jurisdiction of all criminal proceedings are vested in them. It is plain therefore from the Constitution and laws of this State, that the circuit courts are given exclusive jurisdiction to try and determine all felony cases, and it necessarily follows from this that the circuit courts have the exclusive jurisdiction to try, hear and determine the guilt or innocence of any one charged with a felony under the laws of this State. If this be true, and it must be so conceded, then the Jackson County Circuit Court had jurisdiction to try, hear and determine petitioner's guilt or innocence in the murder charge pending against him. But petitioner's insistence seems to be that the Jackson County Circuit Court erroneously exercised the jurisdiction conferred in failing to impanel a jury to determine the degree of homicide of which he was guilty. Granting that this is true, it does not follow that the judgment is void upon its face. Erroneous judgments are not necessarily void judgments. If the court in which the erroneous judgment is entered has jurisdiction of the subject-matter and the parties thereto, such judgment is voidable, but not void. The circuit court of Jackson County had jurisdiction of the subject-matter, and of the person of the petitioner, and the judgment entered, though it may be erroneous, is not void, and its validity can only be brought in question by appeal or writ of error. * * *"

To say that petitioner could ignore his right of appeal, and then gain relief under the petition herein filed, would have the practical effect of doing away with the statutes governing appeals. There would be no reason for one to appeal a conviction if he knew that subse-

quently, at any time he might desire, he could gain another hearing on the validity of his conviction by instituting new proceedings, though raising no new issues.

Summarizing, to concisely state our view, Petitioner could have presented each of the four points herein raised by a direct appeal from the circuit court judgment of October 22, 1957. The claim that the confession was forced rather than free and voluntary, the refusal of the court to quash the information, the alleged failure of the State to establish a *prima facie* case of first degree murder, the erroneous instruction of the jury, and the contention that the judgment rendered was void, were all proper matters for an appeal.

It was not the intention of the General Assembly of 1957 in passing Act 419, to authorize the remedy therein set forth as a substitute for, or in lieu of, the time honored procedure of direct appeal.

The judgment of the circuit court denying the petition, is affirmed.