**STATE of Missouri, Respondent,**

**v.**

**William SYKES, Appellant.**

**No. 50210.**

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied March 14, 1966.

Thomas F. Eagleton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

Peter J. J. Rabbitt, St. Louis, for appellant.

HOUSER, Commissioner.

William Sykes was charged with illegal sale of a narcotic drug and three prior felony convictions. Represented by counsel, tried before a jury, he was found guilty of illegal sale of a narcotic drug as charged. The trial judge found him guilty under the Habitual Criminal Act. His punishment was fixed by the court at 20 years' imprisonment in the penitentiary. No motion for a new trial was filed. A notice of appeal was not filed within the time prescribed by Criminal Rule 28.03, V.A.M.R. This Court made a special order allowing an appeal under Criminal Rule 28.07. On application of the defendant the circuit court was ordered to appoint counsel to represent defendant on appeal, which was done. On application defendant was allowed to proceed in forma pauperis. After defendant had filed numerous requests and petitions a full and complete transcript of the proceedings, including the voir dire examination, all of the testimony at the trial and the closing arguments of counsel, was finally prepared and filed and a copy delivered to defendant's counsel. The latter elected not to submit a

brief on appeal or to orally argue the case in this Court. The case was submitted on the brief of respondent only.

■ We are precluded from a consideration of any matters required to be preserved in a motion for new trial for the reason that, as indicated, no motion for a new trial was filed. State v. Parker, Mo.Sup., 310 S.W.2d 923 [1]. In this situation it is our duty under Criminal Rule 28.02, on the record before the Court, to render judgment as to the sufficiency of the information or indictment, verdict, judgment and sentence.

■ William Sykes was charged by substitute information in lieu of indictment alleging three prior felony convictions, and that on May 28, 1962 at the City of St. Louis, Missouri, not then and there being an apothecary or pharmacist, William Sykes unlawfully annd feloniously sold to one James Snokhaus a certain narcotic drug, to-wit: 8.380 grams of the plant, Cannabis Sativa, commonly called marijuana, at and for the price and sum of $26 in legal currency of the United States of America. The narcotics charge was drawn under § 195.020, V.A.M.S. making it unlawful for any person to sell any narcotic drug except as authorized by the Narcotic Drug Act, and § 195.010(3), V.A.M.S. defining an apothecary, (17) defining narcotic drugs as meaning cannabis, and (5) defining cannabis as including the plant Cannabis Sativa. The information fully informed the defendant of the crime with which he was charged, contained every essential element of the offense as defined by the Narcotic Drug Act and clearly and sufficiently alleged the facts relating to the alleged sale of the narcotic drug. Three felony convictions of William Sykes in the Circuit Court of the City of St. Louis of burglary second degree and stealing $50 or over were duly alleged in proper form. The information fully and adequately stated the dates, the charges, the convictions, the sentences (imprisonment in the Intermediate Reformatory of the State of Missouri),

imprisonment in accordance with the sentences, that they were to run concurrently, that they were served concurrently, and that he was discharged on January 7, 1959 after and upon lawful compliance with the sentences.

Out of the hearing of the jury and prior to the submission of the case to the jury the trial judge heard amply sufficient evidence of the prior convictions, sentences and subsequent imprisonment, before May 28, 1962, to find and the court did determine that this defendant had been previously convicted of and sentenced on the three felonies charged.

■ The jury verdict (omitting caption: "We, the jury in the above entitled cause, find the defendant guilty of Illegal Sale of a Narcotic drug, as charged. James H. Arendall, Foreman") is sufficient in form and substance. A finding of guilty "as charged" was tantamount to finding him guilty "as charged in the information," which was in one count only, State v. Ryan, Mo.Sup., 275 S.W.2d 350, 353 [8], and the verdict was sufficiently responsive to the issues. That the verdict did not assess the punishment was proper since the case was submitted under the Habitual Criminal Act. State v. West, Mo.Sup., 356 S.W.2d 880 [5].

■ The 20-year term of imprisonment assessed as punishment was within the limits of § 195.200(1), V.A.M.S., which provides a maximum punishment of not more than twenty years in a state correctional institution for a first offense under the Narcotic Drug Act.

■ The transcript of the record proper, the "Minutes of Proceedings" and the supplemental transcript all show defendant's presence and the presence in open court of defendant's attorney and counsel, at the time of allocution and sentencing. The *minutes* have been amended by a green-ink interlineation to indicate that defendant appeared for sentencing *without*

his attorney. (We note that the trial judge wrote with green ink in approving the transcript of the record proper.) There is nothing in the record to indicate the making of a nunc pro tunc order authorizing such an amendment of the record. A court speaks through its records and we must take the judgment as the record of what happened. The judgment shows that on sentencing day the defendant came in person "and in the presence of Morris Hatchett, Attorney and Counsel in open Court, * * *." On the record the allocution and sentencing were unexceptional.

The sentence and judgment are proper in form and substance. They follow the verdict returned by the jury and the finding of the court on previous convictions. They are consistent with the punishment fixed by the court. The court allowed defendant the time he spent in jail. The sentence and judgment comply with Criminal Rules 27.08, 27.09 and 27.11.

██ The original transcript included the information, verdict, judgment and sentence, but properly included no testimony since no motion for new trial had been filed. Overlooking defendant's failure to file a new trial motion the court inadvertently ordered the preparation and filing of a full and complete transcript. This was not necessary but now that the supplemental transcript is here we will in this case assume the further burden of reviewing the sufficiency of the evidence to support the conviction of illegal sale of a narcotic drug.

*The state's evidence.* Two federal narcotics agents and a chemist with the Alcoholic and Tobacco Tax Division of the U. S. Department of Internal Revenue testified to the following: On May 28, 1962 agent S had an appointment to meet one Jimmy Lewis at Silver Drug Store, 5101 Page Avenue, in St. Louis. Agent S, dressed as an undercover agent, arrived in an automobile and entered the drug store at about 5:30 p. m. The driver,

agent D, parked the car nearby and waited in it. At 6 p. m. Jimmy Lewis, a special employee of the government who works with the narcotics agents in the apprehension of violators, entered the store. After a brief conversation between the two men Lewis left. Agent S remained in the store. Two or three minutes later Lewis returned to the store and handed agent S a small newspaper-wrapped package. Agent S examined it and found the package to contain green vegetable matter. After a brief conversation Lewis left the drug store, agent S remained, and Lewis later returned with William Sykes, the defendant. Lewis introduced Sykes to agent S, who invited the two men to join him behind a partition at the rear of the store. On the way back to the partition agent S showed the package to Sykes and asked Sykes if he was really expecting to receive two dollars for it. After a brief pause Sykes said "Yeah, I have been receiving that much for stuff not as good." Agent S reopened the package, made a complaint about the quantity and then asked Sykes "What about the rest of it?" Sykes answered that he left it in the car and that it was "as good as" the package. Lewis volunteered to go to the car and bring back the remaining merchandise. Lewis left and while he was gone Sykes and agent S engaged in general conversation. Lewis returned shortly and handed agent S a large brown paper sack. Agent S looked inside, saw several packages similar to the one previously described, emptied the contents of the sack onto a shelf and counted out seventeen additional packages. Three packages, selected at random, contained green vegetable matter. The packages were about 3 by 7 inches in size. Agent S bargained with Sykes for the eighteen packages. Sykes first asked $30. Agent S stated that was too much money. Sykes said that he got more than that on the street. Agent S, whose identity as a government agent was of course not made known, reminded Sykes that dealing on the street involved considerable risk where-

as dealing with him did not and therefore a discount was in order. Sykes then agreed to take $26. Agent S handed Sykes twenty-six one dollar bills which had been marked. Lewis and Sykes left the store. Lewis gave Sykes $1 for cab fare. Lewis then returned to the store, where Lewis and agent S initialed the eighteen packages. The two rejoined agent D in a back alley. Agent S showed agent D the packages. Agent D examined the contents of two or three packages and then initialed all of them. The agents transported the eighteen packages to their office in the federal building and placed them in a locked drawer for safekeeping. The next day agent S removed them from the locked drawer, weighed the green vegetable matter on a scale, placed it in a container, taped it and placed the container and the eighteen wrappers in a manila envelope 7 x 9 inches in dimensions, sealed the envelope in the presence of agent D and forwarded it by registered mail to a U. S. governement chemist at Omaha, Nebraska for analysis. The chemist received them on May 31, 1962, initialed them, placed a laboratory number on them, performed a microscopic study of the material submitted, made a color test and came to the conclusion that the green material was marijuana—Cannabis Sativa.

William Sykes took the stand in his own defense and testified to these facts: Jimmy Lewis, who frequented Sykes' shoeshine parlor, asked Sykes if he wanted to make some extra money, told him he had a friend he wanted him to meet, took Sykes to the drug store at Page and Kingshighway on May 28, 1962 and introduced him to a man whose name was said to be Jim and who was supposed to be a pharmacist there. The so-called pharmacist (who was in fact agent S) wanted Sykes to take money, go out and make buys from people who had marijuana. He mentioned money to Sykes. Sykes told him that he knew nothing about this kind of business, knew no one selling such stuff, had nothing to do with it, could not "make any business" for him, turned and left the premises. Sykes specifically denied possession of marijuana, denied selling any marijuana to the "pharmacist" Jim or anyone else and denied receiving any money from Jim. Sykes admitted that he had never been licensed by the state as an apothecary or pharmacist.

These conflicting versions of what happened at the drug store on May 28, 1962 created a direct issue of fact on the question whether Sykes sold marijuana to agent S. The state's evidence, together with Sykes' admission that he was not a licensed pharmacist or apothecary, made a submissible case of selling a narcotic drug under § 195.020, V.A.M.S. The evidence is amply sufficient to sustain the conviction.

No error appearing the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.