STATE of Missouri, Respondent,

v.

Gene DAVIS, Appellant.

No. 54183.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

Newmark & Baris, Irl B. Baris, Leonard J. Frankel, St. Louis, for appellant.

HOUSER, Commissioner.

Gene Davis was convicted by a jury of the felony of unlawfully selling a stimulant drug in violation of § 195.240, V.A.M.S. The jury assessed punishment at six months in jail and a fine of $1000. Appellant raises six points on appeal.

■ Appellant claims that his conviction under §§ 195.230 and 195.240 violates the state constitution; that these sections unlawfully delegate authority to the department of health and welfare in violation of Article I, Section 31, Constitution of Missouri, V.A.M.S., which provides "That no law shall delegate to any commission, bureau, board or other administrative agency authority to make any rule fixing a fine or imprisonment as punishment for its violation." Section 195.230 directs the division of health of the department of health and welfare to prepare a list of drugs falling within the purview of the terms "barbiturate" or "stimulant" (terms defined in § 195.220). Section 195.240 provides that the sale of any drug so designated is unlawful, with exceptions inapplicable here.

We find no merit in this point. In the enactment of §§ 195.230 and 195.240 the General Assembly exercised its undoubted power to make laws prohibiting trafficking in these drugs and to prescribe punishment for their violation. These sections do not constitute an unlawful delegation of authority to the division to make a rule prohibiting such trafficking or to provide punishment for violation of such rules, and the division has not undertaken to do either of these things. The division has merely complied with the General Assembly's mandate to list all barbituate and stimulant drugs. The General Assembly had full power to make this requirement of the division.

■ Appellant urges that under the evidence he was not guilty of a "sale" of the drugs, which he says invariably involves the payment of current money by the buyer to the seller; that the evidence showed that defendant merely exchanged drugs for cigarettes and a television set; that the only money involved in the transaction was that paid by the alleged seller to the alleged buyer for the excess value of the cigarettes and television over that of the drugs; that "inasmuch as there was no money passing from Dixon to defendant, there was no sale and therefore no violation of Section 195.-240." This contention is disallowed. "A sale ordinarily is defined as a contract to transfer property rights for money paid or promised to be paid, but the term is broad enough to include the transfer of property for any sort of valuable consideration. Freund Motor Co. v. Alma Realty & Investment Co., [235 Mo.App. 587, 142 S.W. 2d 793]; Good v. Erker, 170 Mo.App. 681, 153 S.W. 556." Schulte v. Crites, Mo.App., 300 S.W.2d 819, 822[2]. In declaring unlawful the "possession, sale, distribution, or transfer" of stimulant drugs the General Assembly intended to use the term "sale" in its broad sense, so as to include an exchange of the listed drugs for cigarettes or other property. In point is State v. Miller, 318 Mo. 581, 300 S.W. 765, in which this Court held that an information charging that defendant did "sell, barter, and trade" moonshine for an automobile tire was sufficient; that in enacting the prohibition law making it a felony to "sell, give away" etc. moonshine the Legislature intended to use the word "sell" in its broad sense, so as to include a disposition for any consideration. The Court would not "assume that the lawmakers intended to give the word a meaning which would defeat the purpose of the act." The Court held that the Legislature "did not intend to prohibit selling and giving away moonshine liquor and allow it to be traded

for any consideration other than money," pointing out that such a construction would "stimulate the ingenuity of dealers to devise sales by indirection and accomplish a flourishing business, permitted by the letter of the law." 300 S.W., l.c. 767. The same considerations require a construction that § 195.240 brands as an unlawful sale an exchange of the listed drugs for merchandise.

■ Next, appellant claims that the court erred in not ordering appellant's discharge on the ground that the defense of entrapment was established as a matter of law. We disagree. Entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the intention to commit the crime originated in the mind of the accused, 22 C.J.S. Criminal Law § 45(2), p. 141, or, as stated in United States v. Haden, 7 Cir., 397 F. 2d 460, 466, "* * * unless it is patently clear from the undisputed evidence that government agents originated the criminal design and implanted in the mind of an innocent person the disposition to commit the crime."

■ The State's evidence showed the following: Curtis L. Dixon, agent for the Bureau of Narcotics and Dangerous Drugs, was told by Dallas Barr, an informer, that appellant "had pills, drugs" available. By prearrangement Barr introduced Dixon to appellant, who freely and willingly discussed with Dixon the exchange of "bennies" for cigarettes. Bennies are proscribed drugs—dexadrine or amphetamine pills or capsules. Dixon either expressly or impliedly informed appellant that the cigarettes were "hot," i. e., stolen goods. In this conversation appellant disclosed that he had a source from which he could obtain 50,000 bennies: a pharmacist who had red birds, yellow birds, yellow jackets, tuinol and dexadrine bennies ("* * * just about whatever [he] wanted"). Appellant was interested in exchanging the bennies for cigarettes and asked Dixon how many pills he was interested in. When told that Dixon could not handle 50,000 pills appellant suggested that they could make up the difference in some kind of a cash deal. Appellant gave Dixon his telephone number and told Dixon to get in touch with him later. Dixon agreed and they parted. A week later Dixon called appellant by telephone. Appellant invited him to a certain address on Morton Street in Wellston. When Dixon arrived he and appellant went to a back room. Appellant went into a restroom and came out with a paper drinking cup containing a quantity of capsules (supposedly 400) which later analyzed proved to be dextroamphetamine sulfate. Dixon put the capsules in his pocket and appellant asked what Dixon had brought to trade. Dixon told him he had 40 cartons of cigarettes and a television set. They finally agreed that 20 cartons of cigarettes would be exchanged for the capsules. That left 20 cartons of cigarettes and the television, for which appellant gave Dixon $60 in cash. Appellant drove his Cadillac automobile next to Dixon's parked car. The two men moved 40 cartons of cigarettes and the television into the trunk of the Cadillac. Arrangements were made for Dixon to get $60 worth of pills in a later transaction. Appellant did not inform the law enforcement officers that he had information with respect to supposedly stolen cigarettes. From the foregoing the jury could infer that appellant had a predisposition toward criminality; that he had the criminal intent to traffic in unlawful drugs; that the crime originated in the mind of appellant; that the crime was not the creative activity of Dixon but that Dixon merely afforded appellant an opportunity to commit the criminal act. This "is a far cry from entrapment," Osborn v. United States, 385 U.S. 323, 332, 87 S.Ct. 429, 17 L.Ed.2d 394, reh. den. 386 U.S. 938, 87 S.Ct. 951, 17 L.Ed. 2d 813; Taylor v. United States, 8 Cir., 390 F.2d 278, 283[6], cert. den. 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137, and

does not constitute entrapment as a matter of law.

Although appellant is not entitled to absolute discharge on any of the foregoing grounds he is entitled to a new trial for failure of the trial court to require the State to disclose the identity of the informer Dallas Barr prior to the trial so as to give him an opportunity to obtain compulsory process for his attendance as a witness. At every step of the proceedings from preliminary hearing to voir dire examination at trial appellant, by oral and written motions and requests, sought to require the State to reveal the identity of this witness. The prosecuting officials consistently resisted all such efforts on the ground that communications by an informer are privileged. But after the trial commenced and during the cross-examination of State's principal witness (the agent Dixon), when appellant's counsel reiterated his complaint that the prosecuting attorney would not reveal the name of the informer, the prosecuting attorney said "Why ask me what his name is?," suggested that appellant's counsel ask the witness for his name, and made no objection when the question was asked. The identity of Dallas Barr was thus finally revealed, too late however for appellant to procure his attendance at the trial.

■ While the State is not obligated to produce every witness who knows anything about a criminal charge and in proper cases the privilege for communications made by informers to the State will be enforced, the State may not suppress evidence vital to the defense, State v. Napolis, Mo.Sup., 436 S.W.2d 645, 649, and authorities there cited, or evidence useful in the vindication of the innocence of the accused, or which will lessen the risk of false testimony, State v. Edwards, Mo.Sup., 317 S.W.2d 441, 446–447, or which "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v. United States, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d

639. The determination whether the defendant can have a fair trial without requiring the officers to disclose the name of their informant is a matter resting within the exercise of the discretion of the trial court. State v. Edwards, supra, 317 S.W.2d, l.c. 447[5, 6]; State v. Redding, Mo.Sup., 357 S.W.2d 103.

■ Conceding that an exchange of pills for cigarettes was made, appellant's explanation or justification for dealing in these pills was that he was inveigled into the transaction by the man whose name was finally ascertained to be Dallas Barr. Appellant's testimony indicated that Barr was more than a mere informer; that he was an actual participant in the commission of the crime; that Barr not only introduced appellant to Dixon but also supplied the drugs to appellant. He testified that Barr informed appellant that Dixon wanted pills; that he had been exchanging pills for Dixon's cigarettes for more than two years; that Barr urged him to take the pills and trade them to Dixon for cigarettes; that Barr made arrangements for the transaction and supplied the pills to appellant; that appellant accepted the pills only after he had informed Barr that he was not interested in dope and after being assured by Barr that they were not dope but only innocuous pills of a commercial type used by truckdrivers to keep awake and that Dixon had an outlet for the sale of the pills for that use. Dixon conceded that Barr was paid for his services by government agents who were later reimbursed by the government. If appellant was telling the truth Barr's testimony would have been highly advantageous to appellant. Barr was the only person who could confirm appellant's claim of innocence and help establish his defense of entrapment. Unless appellant waived his constitutional right not to testify, Barr was his only material witness. Paraphrasing Roviaro v. United States, supra, 353 U.S., l.c. 64–65, 77 S.Ct., l.c. 629–630, "[appellant's] opportunity to cross-examine Federal Narcotics Agent [Dix-

on] was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. [Barr] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment * *. He was the only witness who might have testified to [appellant's desire not to get involved in illegal drug activity, Barr's assurance that the pills were not unlawful, and other facts material to the defense]. The desirability of calling [Dallas Barr] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide * * *. This is a case where the [State's] informer was the sole participant, other than the accused, in the [supply of and receipt by appellant of the pills]. The informer was the only witness in a position to amplify or contradict the testimony of [the state's witness Dixon] * * *. We conclude that, under these circumstances, the trial court [abused its discretion and] committed prejudicial error in permitting the [State] to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure."

Various considerations impel this conclusion. In the first place, the State abandoned the basic reason for invoking the privilege (the security of the informer and the preservation to the State of channels of information by which lawbreakers may be brought to justice) by withholding all objections and thus tacitly waiving the privilege and consenting to the disclosure of the name of the informer at the trial. This sudden 180-degree reversal of tactics smacks of a studied effort on the part of the prosecuting authorities to suppress evidence favorable to the defense by concealing the identity of the informer until it was too late for appellant to utilize the information for his benefit. The action of the court in permitting the State to thus thwart the efforts of the accused to gain this information is not consistent with the constitutional necessity of according to an accused his right to be confronted with his accusers and to have process to compel the attendance of witnesses in his behalf. The Attorney General's objection that at the time the trial judge ruled on the preliminary motions seeking this information the judge had no way of knowing that the informer's identity would be made available at the trial; that we are concerned only with whether the judge abused his discretion and that there was no abuse of discretion in the pretrial rulings, is not well taken because at the time the court ruled on the matter on motion for new trial the court was possessed of all the facts and had ample opportunity at that time to correct the error.

Secondly, notwithstanding the informer's security apparently was not involved the State failed to call Dallas Barr as a witness. It was not shown that Barr was not available to the State. Barr might reasonably have been expected to give testimony in favor of the State. Nevertheless he was not only not called but also was shielded from appellant during the pretrial stage. This raises an unfavorable inference that his testimony would have been favorable to and would have corroborated that of defendant.

On remand it will be the duty of the State on request of appellant to make a good faith effort to locate and report to appellant whatever information it has as to the whereabouts of Dallas Barr. Barber v. Page, 390 U.S. 719, 721–725, 88 S.Ct. 1318, 20 L.Ed.2d 255.

Since remand is necessary for the reason given we will not consider other assignments of procedural error involving the giving of an instruction and the propriety of the argument of the prosecuting attorney. These problems may not arise or may be avoided on retrial.

Judgment reversed and cause remanded for a new trial.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and RIEDERER, Special Judge, concur.

STORCKMAN, J., not sitting.