**STATE of Missouri, Respondent,**

**v.**

**William SYKES, Appellant.**

**No. 50210.**

Supreme Court of Missouri,
Division No. 1.

April 10, 1972.

**388**

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Leonard L. Denk, St. Louis, for appellant.

HIGGINS, Commissioner.

William Sykes, with three prior felony convictions, was convicted October 2, 1962, by a jury of the felonious sale of a narcotic drug, and the court assessed his punishment at 20 years' imprisonment. Sentence and judgment were rendered accordingly. §§ 556.280, 195.020, RSMo 1959.

Defendant filed neither timely motion for new trial nor timely notice of appeal; however, upon his application the court by special order under Criminal Rule 28.07, V.A.M.R. permitted defendant to file his notice of appeal out of time. Counsel was appointed and the appeal was submitted on the record and the State's brief in accordance with practices then prevailing. On February 14, 1966, the judgment of conviction was affirmed. State v. Sykes, Mo., 400 S.W.2d 57.

On June 14, 1971, upon application of William Sykes, an indigent, this court, pursuant to Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, vacated the judgment affirming conviction, State v. Sykes, supra, for the reason that no brief was filed in his behalf, and ordered appointment of counsel for defendant if still indigent with direction to counsel to file a brief for appellant in compliance with re-quirements of State v. Gates, Mo., 466 S. W.2d 681. Counsel has complied with this order and the case is again before this court for review.

William Sykes was charged by substitute information in lieu of indictment with three prior felony convictions, and that on May 28, 1962, in St. Louis, not then and there being an apothecary or pharmacist, he unlawfully and feloniously sold to James Snokhous a certain narcotic drug, to wit: 8.380 grams of Cannabis Sativa, commonly called marijuana, for $26.00. The charge was drawn under Section 195.020, RSMo 1959, making it unlawful for any person to sell any narcotic drug except as authorized by the Narcotic Drug Act; Section 195.010(3), RSMo 1959, defining an apothecary, (17) defining narcotic drugs as meaning Cannabis, (5) defining Cannabis as including Cannabis Sativa, and (29) defining sale to include barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee. In the latter respect, the court, in submitting the case, instructed that "sell" as used in the instructions meant the acceptance of payment for and delivery of an article at a fixed price to be paid for the article.

The three felony convictions alleged and found were on one charge of stealing and two charges of burglary, second degree. Defendant was convicted on each charge March 26, 1957; was sentenced to serve concurrently terms of three years' imprisonment in the Missouri Intermediate Reformatory on each charge; was duly imprisoned April 5, 1957; and was duly discharged from the Intermediate Reformatory January 7, 1959.

On May 28, 1962, Jimmy A. Snokhous, a federal narcotic agent operating as an undercover agent, had an appointment with "a special employee or a subject who has been working with us." Around 6:00 p.m., Agent Snokhous was in Silver Drug Store at 5101 Page, St. Louis, Missouri. He had

arrived there about 5:30 p.m. in a government vehicle operated by Agent Edward Demorest. While in the drugstore he met Jimmy Lewis, who, after a brief conversation, left the store. Lewis returned in two or three minutes. "He had a small package, a newspaper wrapped package, and he handed it to me. * * * This package contained green vegetable matter." After a brief conversation with Agent Snokhous, Lewis again left the store and returned accompanied by defendant. "Immediately following the introduction, I invited both to join me behind a partition at the rear of the drug store. * * * Enroute to this location or partition I took the package from Jimmy Lewis, the one I described previously, and I flashed it or placed it before Sykes * * * I took this package and I showed it to Sykes, and I asked Sykes if he was really expecting to receive two dollars for it. * * * After a brief pause, he said, 'yeah, I have been receiving that much for stuff not as good.' * * * I then said, 'what about the rest of it?' Sykes said, he left it in the car, and that it was as good. * * * Immediately after Sykes said the rest of the stuff was in the car and it was as good as the package, Jimmy Lewis volunteered to go to the car and bring back the remaining merchandise. He did leave and Sykes and I remained behind * * *." Lewis returned and handed Snokhous a large, brown paper bag which contained seventeen packages similar to the previously described package; three, opened at random, contained similar green vegetable matter. "After receiving these eighteen packages * * * I asked Sykes what would be the least he would take for the total number * * * and he at that time stated thirty dollars. * * * I stated that that was too much money * * *. Sykes, then, agreed to take twenty-six dollars * * *. I, then, removed twenty-six dollars of previously recorded government funds from my pocket, and I gave those to Sykes * * *." Sykes left with his sack, and Agent Snokhous and Lewis went to the vehicle operated by Agent Demorest where it was parked a block away in an al-

ley. Agent Snokhous had the substance examined and the analysis proved it to be Cannabis Sativa, better known as marijuana.

Agent Snokhous identified Jimmy Lewis as neither agent nor permanent employee of the Federal Narcotic Bureau. "He is just assisting or has been assisting the Bureau in conducting local investigations relative to marijuana traffic." He was not on salary but was given money from time to time to defray expenses. On the occasion in question, it was the understanding of Agent Snokhous that Sykes arrived with Lewis in a Silver Drug Store automobile operated by Lewis. At the time the purchase was made by Agent Snokhous, Sykes agreed to having Lewis go out to the automobile and get the additional packages.

Agent Demorest confirmed that Agent Snokhous had eighteen packages containing green vegetable matter at 6:20 p.m. when he came to the government vehicle parked in the alley.

In his testimony defendant denied possession of marijuana, the alleged sale, and receipt of any money. He stated also that Jimmy Lewis identified Agent Snokhous as a pharmacist at the drugstore, and that Lewis worked for the drugstore. He admitted he had never been licensed as an apothecary or pharmacist.

██ Appellant contends: "There was no[t] sufficient evidence of a sale to support a conviction for an unlawful sale under Section 195.020 * * * as charged, or to support a finding of a sale as defined by the Court's Instruction * * *." His argument is that the evidence fails to reveal any delivery of marijuana by defendant to complete a sale and, "stated differently," that there was no transfer of property rights from defendant to Agent Snokhous to prove a sale, State v. Davis, Mo., 450 S.W.2d 168, 170[2]. This argument is based on the further assertion that there was no transfer or delivery of marijuana by defendant to Snokhous, and that the

record is void in showing defendant ever had control or possession of the packages of marijuana involved. Appellant's position emphasizes the evidence showing that Lewis was the party who carried the marijuana from the automobile to Agent Snokhous. Upon this basis, he reasons that defendant was never shown to have control or possessory right of any of the packages to show an exchange between Snokhous as a buyer and Sykes as a seller.

The difficulty with this position is that it overlooks the impact of other evidence surrounding the transaction. The evidence previously stated shows that Agent Snokhous and defendant Sykes negotiated over the price he would take for his marijuana following delivery by Lewis to the agent of one package; that defendant then indicated he had been getting his price for a poorer grade and that he had additional marijuana just as good which he had left in the car. Lewis then brought the additional seventeen packages in a bag or sack and price for the total quantity was then further discussed between the agent and defendant. The agent and defendant finally agreed on $26 for the lot, the agent paid defendant, and defendant left with his empty sack. At no time did Lewis make any claim to the marijuana or the money. In short, Agent Snokhous and defendant Sykes bartered for a quantity of marijuana, a price was established between them, defendant took the agent's money, and the agent got defendant's marijuana. Such a transaction falls within the meaning of sale as defined by Section 195.010(29), RSMo 1959, the court's instruction, and State v. Davis, supra. Defendant's absence from the actual transfer from automobile to Agent Snokhous is not fatal because constructive possession is sufficient to show defendant's possession, State v. Sledge, Mo., 471 S.W.2d 256, 261[9]. The jury was entitled to infer defendant's control and constructive possession of the marijuana from his statement that he had the marijuana in the car, and from his pocketing of the sale price following the delivery.

The conflicting versions of the transaction at the drugstore created a fact question whether defendant sold marijuana to Agent Snokhous. The State's evidence, together with defendant's admission that he was neither pharmacist nor apothecary, made a submissible case of selling a narcotic drug as charged.

■ By citation of State v. Taylor, Mo., 375 S.W.2d 58, 61, appellant indirectly suggests an entrapment, but no such defense was suggested at trial by requested instruction, and such is not a defense when the accused denies participation in the crime of which he was convicted, State v. McIntosh, Mo., 333 S.W.2d 51, Ann. 61 A.L.R.2d 677.

Appellant's remaining contention is that the court erred in permitting defendant's trial under Section 556.280, RSMo 1959, "in that his prior offenses * * * were not, as to him, punishable by penitentiary imprisonment."

Appellant recognizes that the second offender statute, Section 556.280, applies to "any person [previously] convicted of any offense punishable by imprisonment in the penitentiary"; however, he would avoid the application of the statute to himself by a rather ingenious argument based on Section 216.370(2), RSMo 1959, which provided at the time of his conviction that "if any male person seventeen years of age and less than twenty-five years of age be convicted of a felony for the first time, * * * the court trying such person shall sentence him to the custody of the officials of the intermediate reformatory * * *." From this, he reasons that it was mandatory for the court to sentence him, as it did, to the Intermediate Reformatory on his prior convictions, such convictions, as to him, were not punishable by imprisonment in the penitentiary and therefore the second offender act could not be applied to him.

■ The dispositive factor in answer to this argument is the offense committed and not the correctional institution or other disposition, such as probation, parole, or

fine, involved. The second offender statute is applicable where the prior offense is "punishable by imprisonment in the penitentiary," and there is no question that the stealing and burglaries for which appellant was previously convicted were so punishable. Defendant's sentences to and service of same in the Intermediate Reformatory were due to his age and lack of other prior convictions, not his offenses, and such did not render Section 556.280 inapplicable. State v. Nolan, Mo., 316 S.W.2d 630, 633[5]. See also State v. Cerny, Mo., 248 S.W.2d 844, 845[1], particularly in its distinction of this situation and that of Anthony v. Kaiser, 350 Mo. 748, 169 S.W.2d 47, cited by appellant.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.