STATE of Missouri, Respondent,

v.

Timothy R. TIERNEY, Appellant.

No. KCD 29867.

Missouri Court of Appeals,

Western District.

June 11, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 1979.

Allan J. Fanning, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

SHANGLER, Presiding Judge.

The defendant was convicted by a jury of the sale of methamphetamine, a Schedule II controlled substance, and was sentenced by the court to eight years imprisonment as a second offender.

On appeal, the defendant contends the conviction was without jurisdiction because the information was neither on the oath of the prosecutor nor with citation of the section of the statute which proscribes the conduct charged against him. The defendant admits these objections were not made at the trial, nor after the trial on motion, but contends nevertheless that the information, so truncated, does not charge an offense and thus vests no jurisdiction to adjudicate a conviction.

The prosecution was conducted on an amended information signed by an assistant prosecutor, rather than by the prosecutor, as provided by Rules 24.01 and 24.16. The term *prosecutor* as used in the Rules of Criminal Procedure, however, by the very terms of Rule 36.05 includes an *assistant prosecutor* for the reason, no doubt, that the office commands from both the same qualifications and the same duty. Sections 56.151 [Laws of 1973], 56.180, 56.200, 56.240, 56.550, RSMo 1969. The signature of the assistant prosecutor on the information brought against the defendant was as if done by the prosecutor. *State v. Falbo,* 333 S.W.2d 279, 284[2, 3] (Mo.1960).

The defendant contends, however, that the information was invalid as an accusation because the face did not recite "the section of the Revised Statutes of Missouri which proscribes the conduct charged [and] the section of the statutes which fixes the penalty or punishment therefor" which Rule 24.01(a) prescribes the formal charge *shall contain.* And, indeed, the information contains § 195.200, RSMo 1969, which fixes the penalty for sale of a Schedule II controlled substance but not § 195.020, RSMo

1969, which defines the conduct subject to offense. The defendant does not contend this lapse was error merely [as he may not in the absence of objection at the trial] but that the defect renders the information null as a formal accusation of offense. An information which fails to charge a crime does not empower a court to proceed, cannot support an adjudication of criminal sanction, and the want of jurisdiction is not aided by the verdict but may be raised for the first time on appeal. Rule 28.02; *State v. Johnson*, 548 S.W.2d 245, 247[1] (Mo.App. 1977). An information stated so as to enable the defendant to meet the charge and to bar further prosecution for the same offense, however, is valid against objection. *State v. Tandy*, 401 S.W.2d 409, 412[2–4] (Mo.1966).

The elements for a valid information are given in Rule 24.01. The declared rule, prior to amendment on January 1, 1977, was:

> The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney, and the indictment shall also be signed by the foreman of the grand jury. [It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement.] Allegations made in one count may be incorporated by reference in another count.

The amended rule rescripts as paragraph (a) the original except that the portion in brackets is displaced by the provisions that

> It shall also contain on the face thereof the section of the Revised Statutes of Missouri which proscribes the conduct charged, the section of the statutes which fixes the penalty or punishment therefor, and the name and degree, if any, of the offense.

The amended rule adds paragraph (b) that

> All indictments or informations which are substantially consistent with the forms of

indictments and informations which have been or will be approved by this court shall be deemed to comply with the requirements of rule 24.01(a).

Rule 24.01(b) contemplates the promulgation of forms of informations by the Supreme Court of Missouri to suit the given offense and, in fact, Missouri Approved Charges—Criminal [MACH–CR] 32.08 frames an accusation for the sale of a Schedule II Controlled Substance under § 195.020, RSMo 1969. The official form MACH–CR 32.08, consonant with the requirement of Rule 24.01(a), charges the essential elements of the offense in the terms of the statute and the recitations that the conduct of the defendant violated § 195.020, RSMo 1969, and was punishable upon conviction under § 195.200.1(4), RSMo 1969. The information brought against the defendant lacked any reference to § 195.020 which subjects the sale of methamphetamine to criminal sanction. The prosecution of the defendant, however, was during the interval between the currency of amended Rule 24.01 and the adoption of MACH–CR 32.08 so that the model information adopted thereafter becomes only advisory as to the form amended Rule 24.01(a) intended for sufficient compliance. It is within this perspective that we consider the contention of the defendant that failure of the formal charge to inform that the conduct alleged against him violated the specific statute was essential to an adjudication of conviction.

The advent of the Criminal Code of 1979 was a renovation of the law of crimes enacted to facilitate the administration of justice. To aid this significant public purpose, the Missouri Supreme Court adopted revised criminal instructions as well as new forms for indictments and informations conformable to the content of the code. These coordinate, but separate, implements were made to coincide with the day the new Criminal Code became effective, January 1, 1979.[1] The difference between them is

---

1. Prefatory Letter by the Chief Justice of the Missouri Supreme Court MACH–CR; MACH–CR 1.00, Supplemental Notes on Use; Prefatory Letter by the Chief Justice of the Missouri Supreme Court, MAI–CR 2d; MAI–CR 2d, How to Use This Book.

[other than that of function] that while the MAI–CR forms are required for use, MACH–CR are not. The use of MACH–CR "is recommended by the Court," but Rule 24 of Criminal Procedure and the cases which decide those provisions continue to govern the validity of indictments and informations. MACH–CR 1.00, Supplemental Notes on Use (2).

MACH–CR subserves the administration of criminal justice by the promulgation of forms, for the most part in the language of the criminal statute, but individuated when the statute defines an offense in generic terms, designed to inform the defendant of the nature and cause of the accusation with sufficient definition for defense and so as not to put twice the defendant in jeopardy for the same offense. MACH–CR, How To Use This Book; United States Constitution, Sixth Amendment; Missouri Constitution, Art. I, § 18(a); *State v. Kesterson,* 403 S.W.2d 606, 609[1] (Mo.1966); *State v. Tandy,* supra, l.c. 412[2–4]. MACH–CR, in other words, is designed to avoid error and hence to facilitate conclusive dispositions of criminal prosecutions. It is for this reason that Rule 24.01(b) provides that an information substantially consistent with MACH–CR shall be deemed to comply with the requirements of Rule 24.01(a) for the form, signature and contents of an indictment or information.

■ There is no contention by the defendant that the information does not charge the essential elements of offense under § 195.020 so as to leave doubt as to what to defend against or so as not to preclude a subsequent prosecution for the same conduct. The defendant complains only that the information does not cite § 195.020 which proscribes the conduct charged against him nor § 556.280 to allow punishment as a second offender, in violation of Rule 24.01(a). The Second Offender Act does not charge an offense or fix a penalty but acts only to take the punishment away from the jury to the judge. *State v. Pulis,* 579 S.W.2d 395 (Mo.App. 1979, S.D.). It is evident that whatever consequence those lapses may entail, they do not invalidate the conviction for want of a sufficient statement of charge nor affect jurisdiction. It is evident also, that whatever error may have resulted was waived by failure to object and preserve the question for review on appeal.

■ The defendant next contends that the information was insufficient to invoke the Second Offender Act [and imposition of sentence by the court rather than the jury] because that statute applies to a person previously convicted of an offense punishable by imprisonment in the penitentiary who was sentenced and subsequently placed on probation, on parole, fined or *imprisoned,* whereas the information merely alleges that the defendant was *received* by the Department of Corrections. That allegation clearly implies that the defendant was imprisoned upon conviction and is sufficient for Second Offender Act jurisdiction. *State v. Ellifrits,* 459 S.W.2d 293, 296[1] (Mo. banc 1970). On this issue the defendant contends also that the amendment of the information at the close of the prosecution evidence to allege the prior conviction in Clay County, rather than in Jackson County as originally pleaded, prejudiced the defense. The claim of prejudice is that the defendant was denied opportunity to discover the Clay County record of conviction, presumably to contradict at the trial the Jackson County allegation of prior conviction. The defendant of course was not deterred from discovery of the Jackson County misallegation by an inquiry, formal or informal, which would have certainly disclosed the error. It is, in any event, a formal nonprejudicial defect of the kind cured by jeofails. Rule 24.11 [thirteenth part]; *State v. Garner,* 538 S.W.2d 937, 941[3] (Mo.App.1976).

■ The defendant contends next that the admission into evidence of the two exhibits to prove prior conviction was prejudicial as plain error. The Clay County transcript of judgment, defendant says, was invalid as proof of conviction because the document was without certificate or other official verification. A mere look at the back of the exhibit shows the authentica-

tion of the circuit clerk and refutes this contention. The other exhibit was a Division [formerly, Department] of Corrections[2] record that the defendant, identified as to characteristics, was received and then paroled from custody. The signature of the Supervisor subscribes the record. The defendant contends that only those officials mentioned in §§ 490.180 and 480.190 are empowered to certify a record as evidence, the Supervisor of the Division of Classification and Assignment of the Division of Corrections not among them. To the contrary, the certification of the Supervisor was authentication of the document and the exhibit was proper proof of the matters shown. *State v. Sheets,* 468 S.W.2d 640, 642[1–4] (Mo.1971).

■ The defendant contends also that the evidence did not prove a sale within the elements of the criminal statute. The defendant likens a sale of a controlled substance to a commercial transaction of any other goods with a fixed price, delivery and payment. *Sale* as used in the Narcotic Drug Act, and as charged against the defendant, however, condemns a far more encompassed activity. [§ 195.010—(30)—Definitions]:

> *Sale* includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee.

■ The defendant derives his contention from *State v. Sykes,* 478 S.W.2d 387 (Mo.1972) and *State v. Lemon,* 504 S.W.2d 676, 681–682 (Mo.App.1973). In each case a sale was found and in each case the elements of a traditional sale were present. *Sykes* [l.c. 388] instructed that *sell* meant "the acceptance of payment for and delivery of an article at a fixed price to be paid for the article." That instruction was not challenged and was not an element of decision but was shown in the opinion, no

doubt, to demonstrate the strength of the evidence for conviction. It submitted, in any event, the actual proof, but does not mean what the defendant makes of it here—that no proof short of a performed commercial sale falls within the criminal sanction of § 195.020. *Lemon* follows *Sykes* to decide that when the elements of a commercial sale are shown—agreed price, delivery and payment—a *sale* under the criminal statute is also made out. They give no intimation that a transfer of a controlled substance, less formal or other than a commercial sale, cannot convict under the statute. The precedents follow the clear terms of the statutory definition that a *sale* includes *barter* [*State v. McClure,* 504 S.W.2d 664, 667[3] (Mo.App.1974)]—which is sufficiently proved by mere participation in the determination of the price to be charged for the controlled substance—and also *exchange* [*State v. Davis,* 450 S.W.2d 168, 170[2–4] (Mo.1970)] *gift* and even *offer.* The declaration of § 195.020 that possession, sale, distribution or transfer of stimulant drugs shall be unlawful intends that *sale* shall be given an application unconfined by definitions of the civil practice on commerce and contracts. *State v. Schlagel,* 490 S.W.2d 81, 84 (Mo.1973); *State v. Davis,* supra, l.c. 170[2–4].

■ The evidence was sufficient to submit to the jury the guilt of the defendant of the sale of the controlled substance methamphetamine. The proof was made at the trial by the testimony of three police officers and a forensic chemist. Two of the officers, undercover agents Kramer and Clark, received a telephone call from one Lawson that "a connection" could get them an ounce of "speed" and summoned them to his apartment. The two officers [Kramer equipped with a body microphone monitored by an officer on the exterior] entered the Lawson apartment with an unidentified informant and awaited the arrival of defendant Tierney. On arrival, Tierney intro-

---

**2.** The Department of Corrections has been reorganized into the Department of Social Services which oversees the newly-formed Division of Corrections. We assume the title of the chief administrative officer of the Division of Classification and Assignment was then changed from *Director* to *Supervisor.* Omnibus State Reorganization Act (1974); V.A.M.S., Vol. 3A, Appendix B, § 13, paragraph 15.

duced himself to the officers and stated: "Hey, man, I can get you an ounce of pure speed. It will take us a few minutes to drive to where we're going to go." The others followed Tierney and Lawson in a car as directed and came to the address where the sale was to take place. The defendant Tierney entered the house first, soon emerged, and beckoned the others to join him. They entered the house and were met by one Weekly who, at the request of the defendant Tierney to, "Hey, show the guys the speed," produced a cellophane bag with white powder content. Weekly handed the powder to Officer Clark with the comment, "Hey, it's pure speed, it's never been cut." Thus assured, Officer Kramer agreed to pay Weekly $1,050 for the drug from a roll of bills he displayed. The defendant Tierney then asked: "Hey, what do I get for doing this? How about me?" Lawson made a similar request. Officer Kramer responded and gave a twenty-dollar bill to Tierney, one to Lawson and one to Weekly—presumably on the purchase price of the drugs. With this, Kramer said, "Boy, boy, boy, that's a lot of dough," when the surveillance officers, on that signal [heard via the body microphone], entered the premises for the arrests.

▮ The defendant contends, simply, that there was no sale because the full $1,050 purchase price did not pass to Weekly. A sale was shown under § 195.020 by transfer of the drug for *any* consideration, albeit *not a full requital in contract terms.* *State v. Davis,* supra, l.c. 170[2–4].[3]

The defendant asserts other error in that the court refused his preferred instruction of conspiracy to sell methamphetamine under § 556.120,[4] a misdemeanor. This contention proceeds on the assumption that conspiracy to commit an offense is included within the completed offense—the object of conspiracy—and so the duty befell the court to instruct on the lesser graded and included offense [conspiracy], conduct necessarily concomitant to the commission of the sale.[5]

▮ A conspiracy under §§ 556.120 and 556.130, the law then extant, was an agreement by two or more persons to accomplish by concert of action some criminal or unlawful purpose manifested by an overt act toward completion. *State v. Dalton,* 134 Mo.App. 517, 114 S.W. 1132, 1136 et seq. (1908). A conspiracy under these statutes was treated as an evil per se, subject to punishment separately from the substantive offense which is the object of consummation. Thus a conspirator could be charged, and convicted, at once for both the confederation to do an unlawful act, although still inchoate, as well as the completed act itself. *State v. Slade,* 338 S.W.2d 802, 805[4] (Mo. 1960); 16 Am.Jur.2d, *Conspiracy* § 5; 15A C.J.S. *Conspiracy* § 76. That principle of conspiracy was modified by the 1973 amendment of § 556.130, effective as to this prosecution, that [subsection 2]

no information or indictment charging a person with conspiracy under sections 556.120 and 556.130 may contain a count for any other charge or crime, and no person may subsequently be charged or tried for an attempt to commit an unlawful act or the commission of an unlawful

---

3. That *sale* of a controlled substance under the statute varies from any common understanding or commercial usage of that term becomes evident from the injunction of present MAI–CR 2d 32.06, Notes on Use (3):

> In a separate instruction the following terms, if used in any of the instructions, may be defined by the court on its own motion with a request, and must be defined upon written request in proper form by the state or by the defendant:
>
> . . . . .
>
> *"sale."* [Emphasis added.]

See, also, for the holding, that the sense of that term in comparable statutes does not accord

with the usage in commercial transactions: *State v. Stone,* 114 N.H. 114, 316 A.2d 196 (1974); *State v. Griffin,* 221 Kan. 83, 558 P.2d 90 (1976).

4. This section was repealed by Laws 1977, S.B. No. 60, § 1, which enacts the Criminal Code effective January 1, 1979, and the new § 564.016 on conspiracy.

5. The duty to instruct asserted by the defendant presumably derives from MAI–CR 2.04 and 2.05, Rules 20.02(a) and 26.02(6) and § 556.230, now repealed, and enacted anew as Code § 556.046.

act having first been convicted or acquitted of a conspiracy to commit the same act.

This enactment, however imperfectly, intends to prevent concurrent and subsequent prosecution of a conspiracy and the completed offense.[6] The deterrence of the statute to concurrent and subsequent prosecutions for the inchoate as well as the completed act does not rest on a premise of included offense but on a public policy to avoid the common law practice which vexes an accused twice for the conduct.

The common law history of conspiracy [which tolerated concurrent or consecutive prosecutions for the conspiracy to act and the completed act] as well as the statutory amendments to that traditional doctrine [which confine a prosecutor to a single action for that course of conduct] treat the incipient and the completed conduct as exclusive crimes, independent of the other, and unaffected by the merger and double jeopardy considerations which preclude proceeding on a lesser-included offense after prosecution of the greater offense. LaFave & Scott, Criminal Law, p. 494 (Hornbook Series 1972); *State v. Elliott*, 559 S.W.2d 175, 177[4, 5] (Mo. banc 1977); *State v. Slade*, supra, l.c. 805[4].

 The evidence was that the defendant Tierney was the connection for the illicit sale transaction. He acted the factotum: he arranged the sale, he brought the purchaser to the supplier, entered the premises alone to ensure an acceptable encounter between the purchaser and seller, summoned the purchaser in, exhorted the seller to produce the drug, and on conclusion of the terms of sale, asked for—and received—a money reward for his trouble. This evidence of affirmative participation proves that the defendant was an aider and abettor from incipience to conclusion of an unlawful sale, and not merely a conspirator

of an unfulfilled criminal scheme. An accused who aids and abets the commission of a crime is guilty as a principal apart from an initial conspiracy. *State v. McClure*, supra, l.c. 667[2–5]; *State v. Reich*, 293 Mo. 415, 239 S.W. 835, 837[4, 5] (1922).

The trial court was without authority to submit the conspiracy as a lesser-included offense of the unlawful sale. The proffered instruction was properly refused.

 The complaints that remain relate to contentions of error for an instruction tendered by the defendant as a converse but refused by the court and for irregularity in particulars in the verdict-director which submitted the prosecution theory of guilt. These points come without the text of the challenged instructions or of the converse tendered but refused by the court in violation of Rule 84.04(e) and they will be denied review. *State v. Tash*, 528 S.W.2d 775, 783[28] (Mo.App.1975); *State v. Stuebinger*, 552 S.W.2d 338, 339[2] (Mo.App. 1977). They present, moreover, no contentions of merit. The converse tendered by the defendant as Instruction B was grammatically irregular and not in the form of MAI–CR. It was properly refused. *State v. Todd*, 537 S.W.2d 865, 868 (Mo.App.1976). The instruction then given by the court was a full converse of the element of the direct charged and requested in the tender. The verdict-director was in the form of MAI–CR 14.10 [since superseded by MAI–CR 2d 32.06 for sale of a controlled substance] with the MAI–CR 2.12 modification for active participation as a principal and the proper submission for charge.

The judgment is affirmed.

All concur.

---

6. The discernible purpose of the statute notwithstanding, the amendment read literally—quite inadvertently we believe, allows a double prosecution where the prosecution for the completed offense precedes the conspiracy charge. This anomaly was corrected by the enactment of the Criminal Code Conspiracy § 564.016

which abrogates altogether the common law rule on duplicate prosecutions:

A person may not be charged, convicted or sentenced on the basis of the same course of conduct of both the actual commission of an offense and a conspiracy to commit that offense.