STATE of Missouri, Respondent,

v.

Robert Harter MUELLER, Appellant.

No. KCD 30637.

Missouri Court of Appeals,
Western District.

April 7, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1980.

Application to Transfer Denied
June 10, 1980.

Charles B. Fitzgerald, Warrensburg, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Robert Harter Mueller was convicted at his trial in Johnson County on change of venue at Mueller's request from Pettis County by a jury of the offense of sale of a controlled substance in contravention of § 195.020, RSMo 1969, and he was thereafter sentenced to a term of ten years' imprisonment in accordance with the jury's verdict and the penalty provisions of § 195.200, RSMo Supp. 1975. Mueller appeals, challenging the sufficiency of the evidence and the admission of various exhibits. Affirmed.

A jury could reasonably find from the state's evidence the following facts. Robert W. Currier, a member of the Missouri State Highway Patrol, was working undercover on October 18, 1977, in Sedalia when he contacted Mueller and expressed interest in buying a quantity of marijuana. Agreement as to a price of $45.00 a pound was reached on October 20, at which time Trooper Currier said he would buy 150 pounds. On October 24, Currier and Mueller again met, Currier displayed an envelope containing $6,750.00 in cash and Mueller departed for the purpose of assembling the required quantity of merchandise.

Some four hours later, Mueller returned after telephoning Currier during the interval to report that he was in Marshall, Missouri, that he had been able to obtain only 92 pounds of marijuana and that he would be back in about thirty minutes. Both Currier and Mueller were driving van type vehicles. Upon Mueller's return to Sedalia, the marijuana, which was in plastic trash bags, was transferred from Mueller's van to Currier's, the trooper locked the vehicle and both men then went to a motel room where another trooper, E. L. Porter, also working undercover, was introduced to Mueller as one of Currier's associates. Currier then handed Mueller an envelope, ostensibly containing $4,000.00 (the adjusted purchase price for the reduced quantity) but which actually contained only $50.00 in one-dollar bills. As Mueller opened the envelope and began examining the contents, the troopers identified themselves, placed Mueller under arrest and informed him of his opportunity for legal counsel, his right to remain silent and the consequences of any statements made.

Unknown to Mueller, at the times of his conversations with Currier, the trooper was carrying on his person a sound recording device. Those conversations, as well as the telephone conversation, were recorded on tapes. Following his arrest, Mueller agreed to give a statement which was also recorded. The tapes so obtained were received in evidence and were played to the jury. Also introduced in evidence were the bags of marijuana and the envelope containing the $50.00 delivered to Mueller.

Mueller first challenges the state's evidence as deficient on the issue of proof that marijuana is a Schedule I controlled substance, an essential element for conviction under the charge here lodged. The point arises because the state offered in evidence and the court received as an exhibit 13 CSR 50–130.010(1)(A)3.(13), being an excerpt from rules of the Department of Social Services classifying marijuana as a Schedule I controlled substance. Mueller contends that the exhibit was incompetent because the agency had failed to revise and republish the schedules contained in the rules semiannually as required by § 195.-017–11. RSMo Supp. 1975, and the exhibit was not authenticated by a certificate of the Secretary of State.

■ Discussion of any potential deficiencies in the rule admitted in evidence is unnecessary because the exhibit was superfluous and its admission in evidence was harmless. Section 195.017–2(4)(j), RSMo Supp. 1975, expressly identifies marijuana as a Schedule I controlled substance. Whether marijuana is a controlled substance is a question of law, and the court may take judicial notice of the law. *State v. Harris*, 564 S.W.2d 561, 568 (Mo.App. 1978). If the drug is defined by the statute, a listing in the rules and regulations published by the Division of Health is not re-

quired. *State v. Scarlett*, 486 S.W.2d 409, 411 (Mo.1972). It being unnecessary to do so, we refrain from expressing any opinion as to the asserted defects claimed to arise because the exhibit was not certified and because the rules were not revised and republished semiannually.

■ Mueller next asserts a failure of proof to sustain the charge that he sold the contraband because the transaction was incomplete when measured by standards applicable to a commercial sale. He points to the undisputed evidence that although the agreed price was $4,000.00, only $50.00 was paid and although the agreed quantity was to be 90 pounds, only 77 pounds, as determined by subsequent weighing, was actually delivered. As authority, Mueller cites *State v. Sykes*, 478 S.W.2d 387 (Mo.1972) and *State v. Lemon*, 504 S.W.2d 676 (Mo. App.1973).

■ Neither case aids appellant because they do not stand for the proposition here asserted that the prohibited conduct under § 195.020, RSMo 1969, follows only upon proof of a completed sale by formal, commercial standards. In *Sykes*, the issue was whether the defendant's conviction could stand upon evidence that he negotiated the sale and received the purchase price but arranged delivery through an agent. In *Lemon*, a problem of jury instruction followed evidence which proved Lemon an aider and abettor when he had been charged as the principal in a sale to an undercover agent. Neither case precludes conviction where the complete elements of a traditional sale—agreed price, delivery and payment—are not shown. This follows because the proscribed conduct as defined by the statute includes an exchange, a gift or even an offer to transfer the controlled substance as well as a sale in the normal sense.

■ The precise argument advanced here by Mueller was previously considered and rejected by this court in *State v. Tierney*, 584 S.W.2d 618 (Mo.App.1979), where the defendant contended his conviction was infirm because the evidence established that the full purchase price negotiated for acqui-

sition of the contraband was not paid. There, as here, a sale within the terms of § 195.020, RSMo 1969, depends not upon a commercially satisfactory exchange of value but simply a transfer of the controlled substance for any consideration. *State v. Tierney, supra*, at 624.

Mueller next complains that the trial court should have excluded from evidence the tape recordings surreptitiously made by the trooper of conversations in negotiation for sale and delivery of the marijuana. He contends that 47 U.S.C. § 605 (1968) protects against and prohibits transcription of telephone conversations and that 18 U.S.C. § 2511 (1968) is of like effect where the conversations are between parties meeting in person. Under this point, it is apparently Mueller's position that federal statutes guarantee the privacy of conversations between persons by wire or face to face unless *both* parties consent to waive the secrecy of their communications.

■ While Mueller in his brief cites a number of cases from federal courts and two Missouri cases, none supports the contention for which it is advanced. We first observe that statements which Mueller made to the undercover agent, Currier, tending to show Mueller's complicity in the transaction for sale and delivery of the controlled substance are admissible when related by Currier despite their hearsay character because they constitute admissions against interest. *State v. Zerban*, 412 S.W.2d 397, 400 (Mo.1967). Indeed, Trooper Currier testified at considerable length and without objection as to what was said by Mueller, both personally and over the telephone, in negotiating sale of the marijuana.

In his objection to introduction in evidence of the recordings, Mueller does not contend they were at variance with Currier's testimony nor does he suggest that the recordings were other than duplicative in verbatim form of that which Currier had otherwise described to the jury from memory. In fact, Mueller himself confirmed by his own testimony that he had arranged for sale and delivery of the marijuana to Currier, his defense being that the sale was an

accommodation to a business acquaintance. It is thus difficult to perceive how Mueller claims to have suffered prejudice from receipt of the tape recordings in evidence when the subjects they address were not controverted.

■ Aside from the absence of prejudice, however, the federal statutes which Mueller cites are inapplicable where recording of a conversation is by or with the consent of one who is a participant in the conversation. Whether speaking in person or by wire, the communicant always incurs the risk that his confidence will be divulged by the party addressed and such risk also entails the prospect that the conversation may be recorded by an informant or an agent engaged in a criminal investigation. Recording of such conversations by a law enforcement agent or an informer with the consent of one participant and while acting under color of law does not violate the federal statutes. *U. S. v. Rich*, 518 F.2d 980 (8th Cir. 1975), cert. denied, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976).

■ The exceptions which render Mueller's contentions and authorities inapposite are in fact contained in the statutes themselves. At 18 U.S.C. § 2511(2)(c), interception of wire or oral communications by a party to the conversation or with his prior consent by or for a person acting under color of law is excluded from the prohibition. 47 U.S.C. § 605, while prohibiting interception of communications without authority of the sender, is not applicable to one entitled to receive the communication and no privilege may be asserted as to him. *Rathbun v. U. S.*, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957). The contention by Mueller that the tape recordings were clothed with some privilege and therefore inadmissible in evidence has no merit.

Finally, Mueller argues that the bags of marijuana should not have been received in evidence because they were not obtained incident to a lawful arrest. This he suggests must follow because Missouri State Highway Patrolman Currier had not been appropriately delegated the authority to conduct an undercover investigation into drug traffic in Pettis County. While appellant also refers to various federal and state constitutional protections which he contends immunize him from the evidentiary burden of the marijuana as prosecution exhibits, they will not be recited because not germane to the point briefed.

Mueller's argument is actually bottomed on an assumption earlier dispelled in this opinion, i. e., that no transfer of the marijuana from Mueller to Currier took place because there was only incomplete payment of the purchase price and, hence, no sale in a commercial sense. Mueller also argues, however, that Currier could not seize the marijuana incident to an arrest because Currier, as a highway patrol officer, is limited by Sections 43.025, et seq., RSMo 1978, to law enforcement duties on the public highways, or in special investigations as directed, and he had no general authority to arrest for offenses.

The obvious response to this contention derives from the fact that Currier did not acquire possession of the marijuana as a result of any search or seizure, but by the voluntary transfer which Mueller made from his van to Currier's under the mistaken impression that Currier was a good faith purchaser for the illicit substance. At a time prior to Mueller's arrest, Currier had possession of and control over the marijuana which was under lock and key in his vehicle. Principles limiting the authority of law enforcement agencies to acquisition of incriminating evidence by seizure with or without a warrant or incident to an arrest have no application to the facts of this case.

Significantly, Mueller did not at any time in the progress of this case to a verdict challenge his prosecution for the offense on the ground that the arresting officers, Troopers Currier and Porter, had no authority to make the arrest because not validly assigned to investigatory duty in Pettis County. Of course, if the conduct of Currier in seizing the marijuana was not lawful because he was without authority to make an arrest, implications taint far more than the mere evidentiary question.

This basic question of the officer's authority was not an issue in the trial of the case because evidence adduced from Currier in the course of a hearing on Mueller's motion to suppress prosecution evidence disclosed that Currier had in fact been dispatched by his superior officer to conduct the undercover investigation in Pettis County. Not a shred of evidence even suggested that Currier's work was not authorized as provided in § 43.180, RSMo 1978, which empowers members of the patrol to investigate crimes of any nature when so directed by the superintendent of the highway patrol. Even were the seizure of the marijuana to have been dependent upon Currier's authority to investigate Mueller's conduct and make the arrest, the record confirms that Currier had such authority.

The judgment and sentence are affirmed.

All concur.