**STATE of Missouri, Respondent,**

v.

**Geraldine Margie WOODY, Appellant.**

**No. 13996.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 15, 1985.

C.J. Larkin, Columbia, for appellant.

William L. Webster, Atty. Gen., Christine M. Szaj, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Geraldine Margie Woody ("appellant") guilty of two counts of selling a controlled substance, proscribed by § 195.020.1, RSMo Cum.Supp.1983. Count I charged that she sold marihuana to Ernest Arrasmith on June 19, 1984; Count II charged that 6 days earlier, on June 13, 1984, she sold cocaine to Arrasmith. The jury fixed punishment at 5 years' imprisonment on each count; the trial court assessed those sentences, ordering that they run concurrently.

Appellant maintains that the evidence was insufficient to support a conviction of either count. Additionally, she insists that the trial court erred "in allowing introduc-tion of evidence of appellant's alleged prior drug sales," and that the trial court wrongly refused to instruct the jury on two "lesser-included offenses" under Count I.

In determining whether the evidence was sufficient to support the verdicts, we view the evidence in the light most favorable to them, giving the State the benefit of all reasonable inferences to be drawn from the evidence, and we ignore contrary evidence and inferences. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald,* 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, is such that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty. *State v. Bonuchi,* 636 S.W.2d 338, 340[1] (Mo. banc 1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

Evidence supportive of the verdicts showed that on June 13, 1984, Arrasmith was "working undercover for the Jasper County Sheriff's Department." About 3:00 p.m., that date, Arrasmith, guided by a woman who was aiding him in making "contacts with people who were selling drugs," went to a "trailer" near Carthage where appellant, then age 26, was residing with Max Jeys, a man whom appellant was "wanting to marry."

Arrasmith's reason for going to the trailer was "to purchase cocaine." He had been furnished $500 by the Chief Deputy Sheriff for that purpose.

Arrasmith testified that appellant and Jeys were in the trailer when he entered. Arrasmith began "negotiations" with Jeys to purchase 4 grams of cocaine. Jeys initially quoted a price of $550, but "some bartering or some negotiations" produced an agreement for $480.

What occurred next is revealed in this excerpt from Arrasmith's testimony:

"Q. Now, you had five hundred dollars, is that correct?

A. That's correct.

Q. Who did you give that to? A. Max Jey [sic].

Q. Was Gi-Gi[1] in the room all this time, Geraldine?

A. Yes, she was.

Q. Were there any samples of that cocaine given out that day?

A. Yes, there was.

Q. And who gave those out? A. The Defendant.

Q. Geraldine Woody? A. Yes.

Q. How big a sample are we talking about?

A. Well, it was in a little brown vial with a snorter which you put your nose to snort it. She passed me the, uh,—

Q. You're going to have to speak up a little bit, Ernest, okay?

A. She passed the vial to me to snort.

Q. Did she tell you anything when she passed the vial to you?

A. She said, 'This is just like the cocaine that you'll be buying.' "

Arrasmith testified that appellant demonstrated how to use the apparatus, and that he thereafter placed it to his nose and simulated inhalation. Then, this:

"Q. ... Now, you gave the five hundred dollars to Max Jeys, is that correct?

A. That's correct.

Q. But you only purchased four hundred and eighty dollars worth of cocaine, is that right?

A. That's right.

Q. Did you get change back? A. Yes, I did.

Q. And who did you get the change back from?

A. From the Defendant.

Q. How'd that take place, Ernest?

A. I give Max the five hundred dollars and he told her that he needed some change out of this five hundred dollars,

and so she went to her purse and brought back a twenty dollar bill."

Arrasmith then left the trailer.

He returned on June 19, again finding appellant and Jeys there. On that occasion, Arrasmith bought "a little cocaine" from Jeys for $35, then Arrasmith asked Jeys about purchasing some marihuana. They agreed on a price of $25 for a "quarter bag." [2] Arrasmith testified he gave the money for the marihuana to Jeys. Then, this:

"Q. And who gave you the marijuana?

A. The Defendant.

Q. Geraldine? A. Yes.

Q. And where did she get that from?

A. Out of her purse."

During his testimony, Arrasmith was shown a bag containing marihuana. He identified it as "the marijuana that she passed me out of her purse."

Appellant testified that she was present in the trailer both times Arrasmith was there, but she denied involvement in any of the sales. Appellant conceded that she knew there was cocaine in the trailer, but she maintained that Jeys cut it up and wrapped it for Arrasmith. Appellant denied handing Arrasmith a vial of cocaine to sample, denied telling him that it was the same as he was buying, and denied giving him $20 change. Appellant likewise denied handing Arrasmith any marihuana from her purse. Asked what she did during Arrasmith's two visits, appellant testified: "I didn't do nothing. I just set in the room."

No one except Arrasmith and appellant testified about the two incidents in question.

Appellant's challenge of the sufficiency of the evidence on Count I is twofold. First, says appellant, Arrasmith's testimony, at best, established only that she possessed marihuana. Appellant emphasizes that Arrasmith's testimony did not show

1. According to Arrasmith, "Gi-Gi" was appellant's nickname.

2. One-fourth of an ounce.

that she received any consideration for transferring the marihuana to him. Citing *State v. Mueller,* 598 S.W.2d 564, 567 (Mo. App.1980), appellant asserts that in order to be guilty of selling a controlled substance, a person must receive or agree to receive some consideration in exchange for transferring the substance. Appellant argues that even if Arrasmith's testimony be accepted as true in all respects, it proved only that she handed him a bag containing marihuana, not that she received or agreed to receive any consideration for the transfer.

Appellant's contention is answered by *State v. Schlagel,* 490 S.W.2d 81 (Mo.1973). There, the accused handed a controlled substance to the buyer, after which the buyer and a companion of the accused discussed the price, agreeing on $235. The buyer attempted to hand $240 to the accused, but the accused did not take it, so the buyer handed the money to the accused's companion. The latter was unable to make change, so the accused took $4 from his pocket and handed it to the buyer. Rejecting the accused's argument that the evidence was insufficient to support the conviction of sale of a controlled substance, the Supreme Court stated that evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. *Id.* at 84[2]. In *Schlagel,* as here, the cause was submitted to the jury on the theory that the accused and his companion acted together with the common purpose of committing the offense.[3] The opinion in *Schlagel* points out that it is not necessary that the accused be shown to have performed each and every act. *Id.* at 84.

The evidence in *Schlagel* is virtually identical with the State's evidence on Count I in the instant case. In each, the evidence showed that the accused handed the contraband to the buyer, and in each the buyer handed the purchase money to the accused's companion. In neither did the ac-

cused receive anything of value from the buyer. The only difference between *Schlagel* and Count I of the instant case is that in *Schlagel,* the accused gave the buyer $4 change.

In *State v. Dotson,* 635 S.W.2d 373 (Mo. App.1982), an undercover agent and an informant entered a tavern, where the informant soon engaged the accused in conversation. Shortly after the conversation ended, the accused and a companion approached the agent and the informant, and the accused said, "If you want the pot, follow us outside." The agent and the informant were led to a motor vehicle by the accused and his companion. The accused's companion reached inside the vehicle, removed two bags of marihuana, handed one bag to the informant, and handed the other to the agent, receiving payment separately from each. The accused did not participate in the exchange of the marihuana or the money. Upholding the accused's conviction for sale of marihuana, *Dotson* explained that while presence at the scene of a crime, without more, does not prove a person aided or abetted the commission thereof, when a person present at the commission of the offense shows by some affirmative participation that the crime is an enterprise he wishes to bring about, he becomes an aider and abettor. *Id.* at 373–74[1]. *Dotson* held that the evidence that the accused was in the company of the seller and that the accused directed the buyers to the site of the sales and remained there until the transactions were consummated was sufficient to support a finding that the accused consciously assisted and encouraged the commission of the crime. *Id.* at 373–74[2].

In the instant case, appellant admitted at trial that she was present in the trailer when Arrasmith and Jeys discussed the marihuana transaction on June 19. Arrasmith's testimony established that he and Jeys agreed that Arrasmith would purchase a quarter-ounce of marihuana for

---

**3.** Instruction 5, the verdict directing instruction on Count I in the instant case, comprised MAI–CR 2d 2.12 [1983 Revision] and MAI–CR 2d 32.06. So did Instruction 6, the verdict directing instruction on Count II. Appellant does not dispute the correctness of Instructions 5 or 6.

$25. Appellant, in her testimony, conceded that Arrasmith's testimony, in those respects, was true. The only conflict between appellant's testimony and that of Arrasmith was that appellant denied handing Arrasmith the marihuana.

■ Appellant's admitted awareness that Arrasmith and Jeys had agreed on the quantity of marihuana to be sold and the price therefor, coupled with Arrasmith's testimony that appellant obtained the correct amount of marihuana from her purse and handed it to him when he paid Jeys the stipulated sum, is sufficient to support a finding that appellant actively participated in the marihuana sale, even though the purchase money was received by Jeys instead of appellant.

On the authority of *Schlagel* and *Dotson*, we deny appellant's first challenge to the sufficiency of the evidence on Count I.

Appellant's second attack on the Count I evidence is that Arrasmith's testimony "was fatally inconsistent and contradicted his previous testimony." Specifically, says appellant, Arrasmith, 3 days prior to trial, testified on deposition that it was Jeys—not appellant—who handed him the marihuana.

The foundation for this attack is found in the following statement by defense counsel during his cross-examination of Arrasmith at trial:

"Ladies and gentlemen, at [Arrasmith's] deposition I asked him specifically, 'As to the second meeting, you have testified that you bought a bag or a quarter of a bag from Max?' Answer: 'That's correct.' 'And you bought it from Max, and that Max handed it to you?' Answer: 'That's correct.' "

Arrasmith, at trial, admitted giving the first above-quoted answer to the first above-quoted question, but he did not remember giving the second above-quoted answer to the second above-quoted question. The State, however, in its brief, concedes that the second above-quoted question and the answer thereto do appear in Arrasmith's deposition.

Appellant cites *State v. Hitchcock*, 676 S.W.2d 538, 539[2] (Mo.App.1984), where it is said:

"Ordinarily the testimony of one witness can be sufficient to support a charge even though the testimony may be inconsistent, as inconsistencies in the testimony are questions for the jury; however, the inconsistencies in the testimony of a single witness going to a vital issue will be scrutinized closely to determine whether the testimony constitutes substantial evidence."

Appellant insists that because of the inconsistency noted above, Arrasmith's trial testimony should not be considered substantial evidence of her participation in the alleged marihuana sale.

The precise issue, obviously, is whether Arrasmith's deposition testimony that Jeys handed him the marihuana was so destructive of Arrasmith's trial testimony that the latter did not constitute substantial evidence of appellant's guilt of Count I.

In addressing that issue, we note that Arrasmith, on redirect examination at trial, testified without objection that he prepared reports at the time that the incidents occurred, and that his trial testimony was consistent with those reports. He conceded at trial that he was given an opportunity to review his reports at some point during his deposition, but the extent to which he scanned them before giving the answer seized upon by appellant is unclear. Be that as it may, Arrasmith's trial testimony that appellant handed him the marihuana was positive and unequivocal, and, as previously mentioned, Arrasmith specifically recalled that appellant removed the marihuana from her purse before she handed it to him.

Conflicts in the evidence, the determination of the credibility of the witnesses and the weight to be given their testimony are within the province of the jury. *State v. Newberry*, 605 S.W.2d 117, 121 (Mo.1980). That a witness' testimony may to some extent be contradictory does not prevent its constituting substantial evidence; incon-

sistencies in testimony are questions for jury resolution. *Id.*

■ Guided by those rules, and bearing in mind that there were no inconsistencies in Arrasmith's trial testimony, that the sole inconsistency was between an answer he gave in his deposition and an answer he gave at trial, and that he testified at trial that his trial testimony was consistent with reports he made at the time the incidents occurred, we reject appellant's contention that Arrasmith's trial testimony was insufficient to support a finding of guilty on Count I.

The next point we consider is appellant's challenge of the sufficiency of the evidence on Count II. She asserts that even if Arrasmith's testimony be accepted as true in its entirety, it established only that she gave him "a free sample of cocaine" and that she made change at Jeys' request. That conduct, says appellant, does not make her guilty of selling cocaine.

■ We disagree. As pointed out in our discussion of Count I, evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. *Schlagel*, 490 S.W.2d at 84. It is unnecessary that the accused be shown to have performed each and every act involved in the offense. *Id.*

■ In the instant case, while Arrasmith and Jeys were discussing the price of the cocaine on June 13, 1984, appellant, according to Arrasmith, handed him a vial, explained that it contained cocaine identical to what he would be buying, and demonstrated the use of the apparatus to him. The jurors could have readily inferred from this that appellant was endeavoring to persuade Arrasmith to buy the cocaine. Moreover, when appellant (according to Arrasmith) gave him the $20 change, she used currency from her own purse. The jurors could have reasonably assumed that appellant would not have used her own funds for change unless she was jointly participating with Jeys in selling the cocaine and expected to share the proceeds.

Appellant's contention that the evidence was insufficient to support a finding of guilty on Count II is denied.

We turn now to appellant's complaint that the trial court erred "in allowing introduction of evidence of appellant's alleged prior drug sales." The point is based on the following segment of the prosecutor's cross-examination of appellant:

"Q. You had the normal expenses anybody living in a trailer would have, is that correct? A. Yes.

Q. Were you employed? A. No.

Q. And [Jeys] wasn't employed? A. (Shakes head).

Q. Now, it's a fact, isn't it, Miss Woody, that the employment that paid for these things that kept you in the trailer, that kept you paying your utility bills, that bought you your groceries, that bought anything else you had, was the selling of narcotics, is that correct? A. No.

[DEFENSE COUNSEL]: Your Honor, I'm going to object. He's going into evidence—

THE COURT: What's your objection?

[DEFENSE COUNSEL]: May we approach the bench?

THE COURT: You may.

(Counsel proceeded to the bench where the following proceedings were had.)

[DEFENSE COUNSEL]: Your Honor, he's going into, he's leading up, or I believe that he's leading up to asking about other crimes, or the selling of drugs in general, to support themselves. That would be proof of other crimes, it's not proof of motive, intent, mistake, or any of the other exceptions for which proof of other crimes may be introduced, and I object to any testimony, or any line of testimony, at that.

THE COURT: Objection will be overruled.

(The proceedings returned to open Court.)

Q. Isn't that right? Isn't that how you were surviving out there, by selling narcotics?

A. No."

It is manifest that this dialogue contains no testimony about any "prior drug sales." Appellant flatly denied that she and Jeys were paying their living expenses by selling narcotics. Indeed, immediately after the denial, appellant testified that Jeys earned money by butchering hogs and cows, and by working on cars. Thus, the only arguable indication of any "prior drug sales" was the accusatory tone of the prosecutor's two questions. Those questions, however, did not refer to any particular drug sale, nor did they demonstrate that the prosecutor had knowledge of any specific sale other than the two for which appellant was on trial.

In these circumstances, we find no basis for disturbing the judgment. Even if we assume that evidence of other drug sales by appellant or Jeys would have been inadmissible—a question we need not decide—no such evidence was placed before the jury by the colloquy about which appellant complains. Appellant denied that she and Jeys supported themselves by selling drugs, and neither the prosecutor nor any witness made reference to any specific sale except those of which appellant stood accused. There was, in short, no "evidence" of any "prior drug sales."

Moreover, the mere mention of another offense is not per se prejudicial in the trial of a criminal case. *State v. Lue*, 598 S.W.2d 133, 137[7] (Mo. banc 1980). That is, reversal is not automatic, but is dependent upon the circumstances of the case. *State v. Gilmore*, 681 S.W.2d 934, 942[20] (Mo. banc 1984). Thus, even had there been mention of an unrelated drug sale, reversal would not be inevitable, but would hinge on the extent of the prejudice therefrom. *State v. Martin*, 624 S.W.2d 879, 882 (Mo.App.1981).

In view of (a) appellant's denial of involvement in any drug sales, (b) her explanation as to how Jeys earned income, and (c) the fact that the only reference to any sales other than those charged was in the prosecutor's two questions, neither of which mentioned any particular transaction, we hold that the prejudice to appellant (if there were any) from the two questions was so minimal that reversal is not warranted.

Appellant's final assignment of error is that the trial court, in instructing the jury on Count I, wrongly refused to give appellant's tendered Instruction A (submitting distribution and delivery of less than 25 grams of marihuana for no remuneration, § 195.010(22), RSMo Cum.Supp.1983; § 195.017.2(4)(j), RSMo 1978; § 195.020.1, RSMo Cum.Supp.1983; § 195.200.1(1)(c), RSMo Cum.Supp.1983), and wrongly refused to give appellant's tendered Instruction B (submitting first offense possession of 35 grams or less of marihuana, § 195.010(22), RSMo Cum.Supp.1983; § 195.017.2(4)(j), RSMo 1978; § 195.020.1, RSMo Cum.Supp.1983; § 195.200.1(1)(a), RSMo Cum.Supp.1983).

The only evidence as to the weight of the marihuana sold to Arrasmith was the testimony of a chemistry professor that it weighed 4.57 grams.

As to Instruction A, we note that *State v. Bethel*, 569 S.W.2d 270, 272[4] (Mo.App. 1978), cited with approval in *State v. Story*, 646 S.W.2d 68, 73 (Mo. banc 1983), holds that nonremunerative delivery of less than 25 grams of marihuana is a lesser included offense in the felony of sale of marihuana. Appellant maintains that inasmuch as Arrasmith testified that his negotiations for the purchase of the marihuana were with Jeys and that he (Arrasmith) handed Jeys the money in payment for the marihuana, the jury could have found appellant not guilty of sale of marihuana, and could have found her guilty of delivering the marihuana to Arrasmith for no remuneration.

The argument is without merit. *Story*, upholding a conviction for selling marihuana, explains that in order to require the giving of an instruction on an included or lesser offense, there must be evidentiary support in the case for its submission. 646 S.W.2d at 73. An instruction should not be given in the absence of evidence to support it, as it would be error if

the trial court instructed the jury on a lesser included offense not supported by the evidence and the jury found the accused guilty of that offense. *Id.*

Applying those rules to the evidence on Count I, we hold that the trial court did not err in refusing to give Instruction A. The State's evidence (Arrasmith's testimony) showed that a sale of marihuana took place at the trailer on June 19, 1984, and that appellant actively participated in the sale by taking the marihuana from her purse and handing it to Arrasmith when he paid Jeys the agreed price. There was no evidence to support a hypothesis that appellant made a nonremunerative delivery of the marihuana to Arrasmith. Arrasmith's deposition testimony that it was Jeys who handed him the marihuana obviously would not support an instruction submitting that *appellant* made a nonremunerative delivery, because if the jurors had believed that *Jeys* handed Arrasmith the marihuana, they would have found appellant innocent of any delivery whatsoever. Appellant's testimony likewise did not support a submission that she made a nonremunerative delivery, as she denied any involvement in the marihuana sale and specifically testified that she did not handle the marihuana. Indeed, appellant testified that there was no marihuana in her purse that day.

■ While it might be argued that the jurors could have believed Arrasmith's testimony that appellant handed him the marihuana but could have disbelieved Arrasmith's testimony that he paid for it, that possibility does not require the giving of Instruction A. The fact that a jury may disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences from it, does not entitle the accused to an instruction otherwise unsupported by the evidence. *Story,* 646 S.W.2d at 74; *State v. Achter,* 448 S.W.2d 898, 900[3] (Mo.1970). Moreover, as noted earlier, appellant conceded that Arrasmith bought marihuana at the trailer on June 19, and that she was present when the sale occurred.

■ There being no evidentiary support for Instruction A, the trial court properly rejected it.

■ What we have said regarding Instruction A applies equally to Instruction B. *State v. Corley,* 639 S.W.2d 94, 96[4] (Mo.App.1982), holds that in a prosecution for selling marihuana, an instruction on possession of marihuana is required only if the evidence shows that the accused may be guilty of possession even though he may not be guilty of selling. There was no evidence to support such a hypothesis in regard to Count I in the instant case. The State's evidence was that appellant actively participated in the sale of the marihuana by taking it from her purse and handing it to Arrasmith when he paid Jeys the agreed price. Appellant denied doing so and swore that she had no marihuana in her purse. With the evidence in that posture, the trial court properly rejected Instruction B.

Judgment affirmed.

HOGAN, P.J., and MAUS, J., concur.

PREWITT, C.J., concurs in result.